**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

GLADGER ROSS,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 09-3023-MWB
(No. CR 05-3006-LLP)

**MEMORANDUM OPINION AND**
**ORDER REGARDING**
**PETITIONER'S § 2255 MOTION**

_____

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      *1.*   *Indictment and arrest* . . . . . . . . . . . . . . . . . . . . . . . 3
      *2.*   *Incidents while in state custody* . . . . . . . . . . . . . . . . . . 3
      *3.*   *Pretrial proceedings in federal court* . . . . . . . . . . . . . . . 5
      *4.*   *The trial and the suppression hearing* . . . . . . . . . . . . . . . 6
      *5.*   *Post-trial proceedings and sentencing* . . . . . . . . . . . . . . . 8
      *6.*   *Appeals and resentencing* . . . . . . . . . . . . . . . . . . . . . 9
   *B. The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *A. Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . 13
   *B. Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      *1.*   *Ross's request for discovery* . . . . . . . . . . . . . . . . . . . 15
      *2.*   *Need for an evidentiary hearing* . . . . . . . . . . . . . . . . . . 16
      *3.*   *Prior litigation bar and procedural default* . . . . . . . . . . . . 17
   *C. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . 18
      *1.*   *Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . 18
      *2.*   *Failure to investigate and call alibi witnesses* . . . . . . . . . . 21
         *a.*   *Arguments of the parties* . . . . . . . . . . . . . . . . . 21
         *b.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 23

|  | 3. | *Failure to investigate involuntary statements* | . . . . . . . . . . . | 27 |
|  |  | a. | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . | 27 |
|  |  | b. | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |
|  | 4. | *Failure to challenge untimely presentment to a federal* | | |
|  |  | *magistrate judge* . . . . . . . . . . . . . . . . . . . . . . . . . . | 33 |
|  |  | a. | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . | 33 |
|  |  | b. | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
|  | 5. | *Failure to appeal drug quantity determination by the court* | . . | 39 |
|  |  | a. | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . | 39 |
|  |  | b. | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |
|  | 6. | *Cumulative effect of counsel's errors* . . . . . . . . . . . . . . . | 41 |
| D. | *Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . | 42 |

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

T his case is before the court on petitioner Gladger Ross's April 8, 2009, Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (Civ. docket no. 2), filed with the assistance of counsel. As claims for relief, Ross asserts that his counsel at trial and on appeal was ineffective in failing to investigate and call alibi witnesses, failing to investigate and file a timely motion to suppress Ross's involuntary statements, failing to challenge Ross's untimely presentment to a federal magistrate judge on federal charges, and failing to challenge determination of drug quantity by the sentencing judge rather than a jury. He also asserts that the cumulative effect of counsel's errors deprived him of a fair trial. The respondent contends that Ross is not entitled to relief on any of the grounds that he raises.

# I. INTRODUCTION

## A. The Criminal Proceedings

### 1. Indictment and arrest

In a fourteen-count Indictment handed down January 20, 2005, petitioner Gladger Ross and two co-defendants were charged with drug-trafficking crimes involving crack and powder cocaine. Ross was charged with the following eight offenses: One count (**Count 1**) of conspiracy to manufacture and distribute 50 grams or more of crack cocaine and to distribute an unspecified quantity of powder cocaine, all in violation of 21 U.S.C. § 846; four counts (**Counts 2**, **4**, **5**, and **6**) of distributing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and three counts (**Counts 3**, **7**, and **8**) of distributing powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). A federal arrest warrant for Ross and his co-defendants issued on January 20, 2005.

Pursuant to that and other warrants, members of a joint state and federal drug task force initiated what one officer involved called a "kind of a roundup in town" (Mason City, Iowa) on January 25, 2005. The officer testified that Ross was eventually located after midnight, that is, early on January 26, 2005, intoxicated and hiding inside a shed. He was arrested on state charges of public intoxication and burglary and booked into the Cerro Gordo County Jail. Trial Transcript (Crim. docket no. 139) , Vol. I, 179:20-180:6. A federal detainer was also lodged against Ross. On January 26, 2005, Ross also appeared before a state court magistrate and was appointed a state public defender to represent him on the state charges.

### 2. Incidents while in state custody

The day after his arrest, Ross was interviewed by a psychiatrist. Ross apparently told the psychiatrist that he was "in jail for violating a No Contact Order." The psychiatrist diagnosed Ross as suffering from "major depression, recurrent," cocaine abuse

in partial remission, and antisocial personality features. The psychiatrist prescribed Zoloft. Petitioner's Exhibit 4 at 4. At some point in the next few days, Ross drank poison in an apparent suicide attempt, for which he received emergency medical treatment at the local hospital, but after which he was returned to the Cerro Gordo County Jail and placed on "suicide watch." Ross was seen again by a psychiatrist on February 1, 2005, after the poison incident. In that meeting, Ross indicated that he had intended to hurt himself, but he was not certain if he wanted to die, and the psychiatrist found him to be "indecisive regarding suicidality." The psychiatrist reaffirmed his prior diagnoses of Ross's mental condition, continued his Zoloft, and added Seroquel as a sleep aid. Petitioner's Exhibit 4 at 3.

On February 1, 2005, Ross was also interviewed by law enforcement officers at the Cerro Gordo County Sheriff's Office. A law enforcement officer present at that interview testified during a hearing to suppress Ross's statements, held at the end of the first day of trial, that Ross had notified the chief deputy that he wanted to talk to law enforcement officers. Trial Transcript, Vol. I, 176:12-20. The officer testified that, prior to the meeting, he contacted the United States Attorney's Office for the Northern District of Iowa to ask if it was "okay to talk to him," and was advised that, if Ross was "Mirandized," the officers could talk to him. Trial Transcript, Vol. I, 176:21-177:1. During the interview, Ross was given his *Miranda* warnings and waived his right to counsel. Ross then indicated that he was aware that he was going to be charged with federal drug crimes and that he wanted to try to help himself by assisting with "controlled buys" from members of another gang in town, with connections to Detroit, that had been supplying him with cocaine. Ross also provided other self-incriminating information. The officer present who testified at trial indicated that Ross appeared to be "fine" and "didn't seem agitated at all," just "worried about what was going to happen to him." The officer testified that he did not

know the difference between regular jail clothing and "suicide watch" clothing and that he did not know that Ross was in any special confinement status. The officer also agreed that it was "entirely possible" that the officers present told Ross they would see what they could do to help him, including talking to the United States Attorney. Ross's interview was not recorded. Trial Transcript, Vol. I, 177:2-180:20; *see also id.*, 180:24-183:1 (cross-examination).

### 3. *Pretrial proceedings in federal court*

Eventually, Ross's state charges were resolved by a guilty plea and a sentence to time served. Ross was then arrested on the federal charges pending against him and appeared before United States Magistrate Judge (now Chief United States Magistrate Judge) Paul A. Zoss for an initial appearance, without counsel, on March 21, 2005. *See* Hearing Minutes (Crim. docket no. 22). Judge Zoss directed that counsel be appointed to represent Ross and ordered Ross detained. *Id.* Ross's trial attorney was appointed the same day. CJA Appointment (docket no. 21). Trial on the federal charges against Ross and his co-defendants was set for May 2, 2005, before the undersigned, but subsequently continued, at Ross's request, to a date certain of May 31, 2005, and assigned to a visiting judge. On May 17, 2005, Ross's trial was continued again to June 14, 2005, before another visiting judge, Judge Piersol of the District of South Dakota.

There is no dispute that Ross's counsel assumed until just a few days before the trial that Ross's federal charges would also be resolved by a guilty plea and that Ross would receive a cooperation plea agreement. This is so, even though Ross was never offered a written plea agreement, and he declined to testify against two defendants (the Harringtons) in a federal trial shortly before his own, because he asserted that he did not know anything about those defendants. Counsel admitted on the trial record that he did not believe that Ross intended to go to trial until eight days before his June 14, 2005, trial date, when Ross

called him to tell him he wanted to go to trial. Counsel also admitted on the trial record that he had "scrambled" to get ready for trial in the time remaining. Trial Transcript, Vol. I, 18:8-19:11. In an affidavit attached as Exhibit 1 to the respondent's Response to Ross's § 2255 Motion, counsel represented that Ross had explained that he wanted to go to trial, because of the acquittal a week earlier of the defendants against whom the prosecution had wanted Ross to testify and against whom the prosecution had used the same confidential informants that the prosecution intended to use in Ross's case.

### 4. *The trial and the suppression hearing*

On June 13, 2005, the day before trial, the prosecution dismissed **Count 3** against Ross, but Ross proceeded to jury trial on the remaining seven counts against him. On the first day of trial, June 14, 2005, Ross's counsel belatedly asserted a motion to suppress Ross's February 1, 2005, statements to law enforcement officers on the ground that the statements were involuntary. Judge Piersol agreed to hear the belated suppression motion at the end of the first day of trial.

At the suppression hearing on June 14, 2005, Ross's counsel asserted that Ross's February 1, 2005, statements were involuntary, because Ross had been arrested, but not yet arraigned; he did not know the nature of the offense he was charged with or suspected of; he was not given specific advice that he had the right to assistance of counsel, although he had been advised of his *Miranda* rights; he was without the assistance of counsel; at the time of the statements, he was under the influence of medications, specifically, the anti-depressant Zoloft; and at the time of the statements, he was under suicide watch. Counsel offered records of Ross's medications during the time that he was at the Cerro Gordo County Jail. The prosecution offered the testimony of one of the officers present during the February 1, 2005, interview, who recounted the circumstances of that interview as outlined in Section I.A.2., above.

At the end of the suppression hearing, Judge Piersol concluded that Ross had requested the interview to try to work things out for himself; that Ross had been advised of his *Miranda* rights and had waived counsel; that Ross knew federal charges were coming, even if he did not yet know what they were; and that there was nothing to show that Ross's will had been overborne or that his statements were in any way involuntary. Therefore, Judge Piersol denied Ross's motion to suppress. Trial Transcript, Vol. I, 183:10-184:5. Evidence of the February 1, 2005, interview, including Ross's incriminating statements, was admitted at trial. Trial Transcript Vol. II, 386:8-389:25.

In the course of trial, evidence was presented through testimony of law enforcement officers and confidential informants, that, among other drug deals, Ross sold a confidential informant crack cocaine from a van in a park in Mason City shortly after 4:00 p.m. on September 1, 2004. Although Ross contends that he had told his attorney that he was at the hospital all day that day, because his girlfriend was giving birth to his daughter, that alibi evidence was not presented at trial. Counsel avers in his affidavit that it was not until June 9, 2005, that Ross advised him of his girlfriend's name and his version of events on September 1, 2004. Counsel avers that he then promptly contacted Ross's girlfriend and "made arrangements for her to come to Sioux City from her residence in Mason City to testify at Mr. Ross's trial," but "at some point in the trial, [he] learned ([he] believe[d] through some source besides directly from [the girlfriend]), that she could not or would not be making the trip to Sioux City to testify." Respondent's Exhibit 1 at 2. Counsel does not recall and does not believe that Ross advised him of his girlfriend's sister's name, even though Ross now contends that his girlfriend's sister was also present at the hospital the whole day on the day that Ross's daughter was born and that she would have testified that she was with Ross all that day, so that he could not have gone to the park to sell crack

cocaine as alleged. Counsel avers that, if he had been advised of the sister's name, he would also have used every effort to get her to testify at trial. *Id.*

There is no indication in the record that counsel ever subpoenaed either the girlfriend or her sister to testify at Ross's trial. Rather, the girlfriend avers that counsel contacted her, but never told her of the date or location of Ross's trial, so that she could not attend the trial, and the sister contends that she was never contacted by counsel or otherwise informed of the date or location of Ross's trial, so that she also was not able to attend his trial as she had planned to do. Petitioner's Exhibits 1, 20, and 21.

Counsel avers in his affidavit that these alibi witnesses likely would not have made any difference, because law enforcement officers, not just the confidential informant, identified Ross as the driver of the van involved in the crack sale on September 1, 2004. However, counsel apparently does not remember his own cross-examination of the law enforcement officers, which revealed that neither saw who was in the van on that day, although law enforcement officers had recognized Ross as the driver of the same van on other occasions. *See* Trial Transcript, Vol. I, 134:25-135:23; Vol. II, 385:22-25, 386:3-7.

Confidential informants provided the bulk of the testimony about Ross's drug dealing, although law enforcement officers also testified about various transactions, and the prosecution presented evidence of Ross's February 1, 2005, statements to law enforcement officers. On June 16, 2005, the jury convicted Ross of all seven charges on which he was tried. Verdict Form (Crim. docket no. 79).

### 5. *Post-trial proceedings and sentencing*

On June 22, 2005, the court received correspondence from Ross, which the court construed as a *pro se* motion for new counsel (Crim. docket no. 85) and as a *pro se* motion for a new trial (Crim. docket no. 86). After a hearing on July 15, 2005, Judge Zoss denied Ross's motion for new counsel. Hearing Minutes (Crim. docket no. 94). On

August 1, 2005, Judge Piersol denied Ross's *pro se* motion for a new trial. Order (Crim. docket no. 97). The only post-trial motion filed by Ross's counsel was a motion for downward variance in Ross's sentence, based on the discrepancy between the crack cocaine and the powder cocaine sentencing guidelines. (Crim. docket no. 112).

At sentencing on November 22, 2005, Judge Piersol determined that half of the cocaine involved in Ross's offenses was crack cocaine and half was powder cocaine, but he rejected a 100:1 crack-to-powder ratio, thereby reducing Ross's advisory guidelines range from 262 to 327 months to 210 to 262 months. Upon consideration of the 18 U.S.C. § 3553(a) factors, Judge Piersol imposed a sentence of 210 months of incarceration, with various other terms and conditions. Sentencing Transcript (Crim. docket no. 135).

### 6.    *Appeals and resentencing*

Ross filed a Notice Of Appeal (Crim. docket no. 127) on December 6, 2005, and the prosecution filed a Notice Of Cross Appeal (Crim. docket no. 141) on January 3, 2006. On appeal, Ross challenged the district court's orders denying his motion to suppress and denying his motion for a new trial and also challenged the district court's drug quantity findings, but not that the district court, rather than a jury, made those findings. The prosecution cross-appealed the district court's variance based solely on the court's rejection of the 100:1 crack-to-powder ratio. *See United States v. Judon*, 472 F.3d 575, 580-81 (8th Cir. 2007). Ross was represented on appeal by the same attorney who had represented him at trial.

The appellate court noted that Ross had asserted that he was depressed and under the influence of anti-depressant medication, but found that he had failed to present competent evidence of these facts. *Judon*, 472 F.3d at 581. The court also found that, "[e]ven assuming that the officers in fact promised to forward Ross's information to federal prosecutors, there is no evidence that such a promise overbore his will and

critically impaired his capacity for self-determination," and "[w]ithout evidence establishing that the officers overbore his will and critically impaired his capacity for self determination," Ross's arguments for suppression of his statements failed. *Id.* Thus, the appellate court affirmed denial of Ross's motion to suppress. The appellate court also affirmed denial of Ross's motion for a new trial, finding that, while Ross had presented reasonable arguments challenging the credibility of the confidential informants, the confidential informants' testimony was corroborated by testimony of law enforcement officers and audio recordings of controlled buys. *Id.* at 583. Finally, the appellate court recognized the ambiguity of the evidence concerning how much cocaine was crack and how much was powder, but the appellate court was not "definitely and firmly" convinced that the district court made a mistake in interpreting the testimony and calculating the quantity of drugs attributable to Ross. *Id.* at 585.

Turning to the prosecution's cross-appeal, the appellate court relied on its *en banc* decision in *United States v. Spears*, 469 F.3d 1166 (8th Cir. 2006)—which was subsequently overturned by the Supreme Court in *Spears v. United States*, 552 U.S. 1090 (2008), and *Spears v. United States*, 129 S. Ct. 840 (2009)—to hold that Judge Piersol abused his discretion and committed reversible error by varying downward under § 3553(a) based solely on his rejection of the 100:1 drug quantity ratio between crack and powder cocaine. *Judon*, 472 F.3d at 585. Therefore, the court vacated Ross's sentence and remanded for resentencing. *Id.* at 587. The appellate court subsequently denied Ross's petition for rehearing *en banc*, but Circuit Judge Bye dissented, on the ground that he believed that the district court had incorrectly determined the amount of cocaine attributable to Ross. *United States v. Ross*, 478 F.3d 971 (8th Cir. 2007).

In the interim between the appellate court's decision and Ross's resentencing hearing on remand on April 4, 2008, the Supreme Court handed down its decision in

*Kimbrough v. United States*, 552 U.S. 85 (2007). In *Kimbrough*, the Supreme Court held that district courts are free to deviate from the 100:1 crack-to-powder ratio under the Sentencing Guidelines. The Supreme Court also subsequently granted certiorari and vacated the judgment in the case of one of Ross's co-defendants in light of *Kimbrough*. *See Judon v. United States*, 552 U.S. 1090 (2008). Thus, the issues on Ross's resentencing were quite different from what the Eighth Circuit Court of Appeals and the parties might have originally expected.

At the resentencing hearing on April 4, 2008, Ross was still represented by the same counsel, even though he had again filed a *pro se* motion for a new attorney (Crim. docket no. 199), and that motion had again been denied (Crim. docket no. 200). On resentencing, Judge Piersol concluded that he had miscalculated the amounts of crack and powder cocaine, but again determined that the appropriate crack-to-powder ratio for sentencing purposes was 20:1 in light of the authority to make such a determination in *Kimbrough*. Therefore, Judge Piersol recalculated Ross's advisory guidelines sentencing range as 140 to 175 months and determined, based on consideration of all § 3553(a) factors, that the appropriate sentence was 140 months of incarceration. Resentencing Transcript (Crim. docket no. 229). No party appealed the judgment on Ross's resentencing.


## B. The § 2255 Motion

In response to various *pro se* motions from Ross for documents pertaining to his case, Judge Zoss determined that both the court and the parties would benefit from appointment of counsel to represent Ross in his efforts to prepare a § 2255 motion. Therefore, by Order (docket no. 235), entered October 24, 2008, Judge Zoss directed the Clerk of Court to appoint counsel to represent Ross in connection with the filing of any

motion for relief under § 2255 and directed that all further motions for copies of documents or discovery must be made through counsel.

April 8, 2009, Ross filed, with the assistance of new counsel, his Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (Civ. docket no. 2). In that motion, Ross asserts that his counsel at trial and on appeal provided ineffective assistance in the following four respects: (1) failing to interview his alibi witnesses, his girlfriend and her sister, concerning his whereabouts at the time of the alleged drug buy on September 1, 2004; (2) failing to investigate and preserve evidence of the involuntary nature of his February 1, 2005, statements, owing to his mental state, and to file a motion to suppress in a timely manner; (3) failing to investigate whether his rights were violated by the failure to take him before a federal magistrate judge in a timely manner as required by Rule 5 of the Federal Rules of Criminal Procedure; and (4) failing to litigate on appeal the sentencing court's determination of the crack versus powder quantities attributable to him in violation of his Sixth Amendment right to trial by jury. Ross filed a brief (Civ. docket no. 8) in support of these claims, as ordered by the court, on June 19, 2009. Ross's § 2255 Motion was eventually assigned to the undersigned, even though Judge Piersol had been the trial and sentencing judge.

The respondent filed a Court-Ordered Response To Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 (docket no. 11) on August 31, 2009. Ross then filed a Reply (Civ. docket no. 16) in further support of his § 2255 Motion on November 11, 2009. In his Reply, among other things, Ross requested an evidentiary hearing and discovery.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

Turning to the legal analysis of Ross's claims, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

A claim that has been unsuccessfully raised on direct appeal may not be relitigated on a motion to vacate. *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have

convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Ross's claims for § 2255 relief.

## B. Preliminary Matters

### 1. Ross's request for discovery

The court finds that Ross's request for discovery, first made in his Reply, is neither timely nor in compliance with Rule 6 of the Rules Governing Section 2255 Proceedings For the United States District Courts. FED. R. § 2255 P. 6(b) ("A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents."). Moreover, the court finds the present record, including the transcripts of

the trial, suppression hearing, and sentencings in Ross's criminal case, is sufficient to determine the matters presented. *Cf. Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (stating the circumstances under which a hearing is not required on a § 2255 motion, including whether the petitioner's allegations are contradicted by the record). Ross's belated request for discovery will be denied. *See also Barron v. Keohane*, 216 F.3d 692, 693 (8th Cir. 2000) (noting that "discovery is available in habeas proceedings at the discretion of the District Court," citing FED. R. § 2255 P. 6(a)).

### 2. *Need for an evidentiary hearing*

Ross has also requested an evidentiary hearing on his § 2255 motion. "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster*, 447 F.3d at 1132 (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. §2255. On the other hand, an evidentiary hearing is necessary where "'the court is presented with some reason to question the evidence's credibility.'" *Kingsberry v. United States*, 202 F.3d 1030, 1033 (8th Cir. 2000) (quoting 1 Liebman and Hertz, Federal Habeas Corpus Practice and Procedure § 19.5, at 723 (3rd ed. 1998); *id.* at 1033 n.6 (also quoting 28 U.S.C. § 2254, Rule 7 advisory committee's note (1994), made applicable to § 2255 by reference, as stating, "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful."). In this case, the court concludes that no evidentiary hearing is required on any issue, because, even if the court were to conclude that counsel's affidavit, standing alone, only raises credibility questions, *Kingsberry*, 202 F.3d at 1033, the entire record conclusively shows that Ross's allegations

either cannot be accepted as true, because they are contradicted by the record, or that, even if his allegations were accepted as true, they would not entitle him to relief. *Buster*, 447 F.3d at 1132.

### 3.     *Prior litigation bar and procedural default*

The respondent asserts that Ross's last claim for relief is barred, because he failed to assert in the district court or on appeal that the sentencing court improperly determined the quantities of crack and powder cocaine that determined his maximum sentence. The court concludes that none of the claims presented are either barred or procedurally defaulted, because all are cast as ineffective assistance of counsel claims. The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."); *see also Becht*, 403 F.3d at 545 (the "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel").

More specifically, even if Ross did not previously raise a claim that the sentencing court improperly determined the quantities of crack and powder cocaine that determined his maximum sentence, he asserts precisely that his failure to do so on appeal was because of the ineffective assistance of his counsel. *Becht*, 403 F.3d at 545 (the "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel"). Also, even though a petitioner cannot raise in a § 2255 motion a claim that was decided against him on appeal, *see Dall*, 957 F.3d at 572, and one of Ross's claims concerns his motion to suppress, which the Eighth Circuit Court of Appeals already affirmed was properly denied, *see Judon*, 472 F.3d at 581, Ross's

17

§ 2255 claim concerning the suppression motion is different from his claim on appeal: On appeal, Ross claimed that the trial court erred in denying the motion to suppress on the evidence presented, but here, he claims that his counsel was ineffective in failing to investigate and present an adequate and timely motion to suppress. *Hughes*, 330 F.3d at 1069 ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

Therefore, the court will consider all of Ross's ineffective assistance claims on the merits.

## C. Ineffective Assistance Of Counsel

All of Ross's claims for § 2255 relief are claims of ineffective assistance of counsel. Thus, the court will first summarize the standards generally applicable to claims of ineffective assistance of counsel, then turn to specific consideration of each of Ross's ineffective assistance claims in turn.

### 1.     Applicable Standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United

States."). As noted above, in the discussion of procedural default, the Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See Hughes*, 330 F.3d at 1069 ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic

choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)).

Essentially the same standards apply to effective assistance of appellate counsel. A criminal defendant is constitutionally entitled to the effective assistance of counsel both

at trial and on direct appeal. *Evitts*, 469 U.S. at 396; *Bear Stops*, 339 F.3d at 780; *see also Steele*, 518 F.3d at 988. To establish ineffective assistance of appellate counsel, the claimant must once again show that appellate counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his appeal. *Williams v. Kemna*, 311 F.3d 895, 898, (8th Cir. 2002) (citing *Tokar v. Bowersox*, 198 F.3d 1039, 1051 (8th Cir. 1999), *cert denied*, 531 U.S. 886 (2000)). The deficient performance standard is rigorous as to appellate counsel, because "experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Absent contrary evidence, it is assumed that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy. *Brown,* 528 F.3d at 1033. The prejudice standard is equally rigorous: The claimant must show that "the result of the proceeding would have been different" had he raised the issue on direct appeal. *Id*. (citing *Becht*, 403 F.3d at 546).

### 2. Failure to investigate and call alibi witnesses

Ross's first claim is that his trial counsel was ineffective in failing to interview his alibi witnesses, his girlfriend and her sister, concerning his whereabouts at the time of the alleged drug buy on September 1, 2004. The respondent asserts that this claim is without merit.

### a. Arguments of the parties

Ross asserts that he told his counsel that his girlfriend and her sister would testify that he was with them at a local hospital for the birth of his daughter from at least 8:30 a.m. until at least 8:30 p.m. on September 1, 2004, a day on which he was accused of selling crack cocaine to a confidential informant from a van in a park in the late afternoon. Ross contends that counsel's failure to investigate the alibi witnesses is the kind of

egregious inattention discussed in this court's decision in *United States v. Hernandez*, 450 F. Supp. 2d 950 (N.D. Iowa 2006), and in the Eighth Circuit decision in *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994). He asserts that, had counsel interviewed these witnesses and secured their testimony at trial, their testimony would have been useful to impeach the credibility of the paid cooperating witness who claimed he was involved in the September 1, 2004, controlled buy, because their testimony would have shown that the confidential informant was lying about Ross's presence at the park that day. He points out that such alibi witnesses were critical, because no law enforcement officer actually saw him conduct the alleged drug transaction on September 1, 2004. He contends that the testimony of the alibi witnesses would have been particularly damaging to a confidential informant who had been found not credible just two weeks before in another trial, who was paid handsomely for his work in Ross's case, and who admitted that he was doing drug deals on the side for his own benefit and using drugs at the time that he was purportedly working for federal agents. Ross contends that, if such alibi testimony had been presented, it is more probable than not that he would have been acquitted, when that evidence is coupled with the lack of credibility of the prosecution's "star witnesses."

The respondent argues that a decision not to call a witness is virtually unchallengable as a decision of trial strategy. The respondent also argues that counsel's decision must be considered in light of what the defendant told his counsel. Here, the respondent argues that Ross's counsel did speak with the only potential alibi witness that Ross identified prior to trial, his girlfriend, had secured her presence for trial, and then only learned in the middle of trial that she would not be present and would not testify on Ross's behalf. The respondent points out that counsel avers that he was simply never told about Ross's girlfriend's sister, and if he had been, he would also have attempted to secure her testimony at trial. The respondent also asserts that Ross cannot show any prejudice

from the failure to call the alleged alibi witnesses, because the controlled buy that the alibi witnesses would have challenged involved only one of two confidential informants, and only one of numerous controlled buys involving Ross, all of which were supported by other corroborating evidence from law enforcement officers and Ross's own statements. Thus, the respondent asserts that the evidence of Ross's guilt was overwhelming.

In reply, Ross points out that counsel did not subpoena either alibi witness and did not even inform those witnesses of the date and location of trial. He contends that the reality of alibi witnesses who could show that the cooperating witness was willing to lie (and therefore could not be trusted) would certainly have gone a long way to a more favorable plea offer from the government or even towards acquittal by a jury.

### b. Analysis

More than a decade ago, the Eighth Circuit Court of Appeals made clear that "[c]ounsel has a duty to make a reasonable investigation based on the information provided by a defendant, particularly when an alibi is involved." *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (citing *Strickland*, 466 U.S. at 691, and *Sidebottom v. Delo*, 46 F.3d 744, 752 (8th Cir.), *cert. denied*, 516 U.S. 849 (1995)). Thus, it is unreasonable for counsel not to make some effort to contact alibi witnesses. *See Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997) (citing *Grooms v. Solem*, 923 F.3d 88, 90 (8th Cir. 1991)). Where counsel made numerous efforts to locate alibi witnesses, counsel's representation cannot be said to have fallen below an objective standard of reasonableness within the meaning of *Strickland*. *Anderson*, 106 F.3d at 245. On the other hand, counsel performs deficiently when counsel fails to investigate alibi witnesses identified by the defendant, particularly where the incident for which the witnesses might establish an alibi is critical to the case. *Hadley*, 97 F.3d at 1135 (finding deficient performance where counsel failed to investigate alibi witnesses identified by the defendant concerning an attempted break-in,

which was crucial to the case, and citing *Tosh v. Lockhart*, 879 F.2d 412, 414 (8th Cir. 1989), as finding deficient performance for failure to obtain alibi testimony of known, relevant witnesses, and *Thomas v. Lockhart*, 738 F.3d 304, 308 (8th Cir. 1994), as finding that an investigation was deficient where it consisted of simply reading a police file, but not investigating three alibi witnesses identified by the defendant).

There is no dispute that Ross told counsel about his girlfriend, as a potential alibi witness, who would testify that Ross was at the hospital with her for the birth of their daughter at the time of the alleged controlled buy by a confidential informant at a park on September 1, 2004. Counsel asserts in his affidavit, and the girlfriend admits in her affidavit, that counsel did contact this alibi witness. *See Hadley*, 97 F.3d at 1135 (it is deficient performance not to contact alibi witnesses identified by the defendant). Even so, the court has considerable doubt that one contact between counsel and a potential alibi witness could be considered sufficient investigation of the alibi witness. *See Anderson*, 106 F.3d at 245 (finding no deficient performance where counsel made numerous efforts to contact alibi witnesses). This is particularly true where the time constraints on investigating the case were the result of counsel's failure to consider that the case might go to trial more than eight days before the scheduled trial.

Moreover, the evidence of whether counsel made any real effort to secure the testimony of Ross's girlfriend at trial is in dispute: Counsel contends that he "made arrangements for her to come to Sioux City from her residence in Mason City to testify at Mr. Ross's trial," Respondent's Exhibit 1, but the girlfriend avers that, although counsel contacted her once, she "did not appear at trial because [she] did not know the dates, or whereabouts of the trial due to my lack of contact with [counsel]," and she "was not subpoenaed," Petitioner's Exhibit 20. There is certainly no evidence in the record that counsel subpoenaed the girlfriend to testify, nor any evidence of the nature of the

"arrangements" counsel purportedly made to secure the attendance of this witness. This court has considerable doubt that it was reasonable performance, under the circumstances, for counsel to fail to subpoena a witness or otherwise to ensure the attendance of a witness who could and was willing to provide an alibi for a defendant during one alleged controlled buy, and who thus might impugn the credibility of the confidential informant present during that controlled buy as to that and other incidents. *Compare Forest v. Delo*, 52 F.3d 716, 722 (8th Cir. 1995) (finding no deficient performance, despite failure to subpoena an alibi witness that one counsel had contacted but who was uncooperative and indicated that she would not testify, because there was a reasonable basis for not calling the witness); *with Eldrige v. Atkins*, 665 F.2d 228, 235 (8th Cir. 1981) ("A competent lawyer's duty is to utilize every voluntary effort to persuade a witness who possesses material facts and knowledge of an event to testify and then, if unsuccessful, to subpoena him to court in order to allow the judge to use his power to persuade the witness to present material evidence. We cannot accept trial counsel's excuse that he thought Taylor would not cooperate.").

While there is no dispute that Ross notified his counsel that his girlfriend might be an alibi witness, there is a dispute in the record about whether Ross ever identified his girlfriend's sister as a potential alibi witness: Counsel avers that Ross did not, while Ross avers that he did. Counsel only performed deficiently, if he failed to contact an alibi witness he did or reasonably should have known about. *See Hadley*, 97 F.3d at 1135 (it is deficient performance not to contact alibi witnesses identified by the defendant).

If Ross's ineffective assistance claim actually turned on whether or not counsel performed deficiently in failing to procure the testimony of either Ross's girlfriend or her sister as an alibi witness, an evidentiary hearing would probably be required, because of the conflicts in the evidence about whether counsel made any real effort to secure the

testimony of the girlfriend and whether counsel even knew about the girlfriend's sister. *See Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001) (holding that the district court abused its discretion in not holding an evidentiary hearing on a § 2255 claim of failure to call alibi witnesses, because the record before the district court "contained sharply conflicting evidence"). The court finds, however, that this ineffective assistance of counsel claim can be resolved on the "prejudice" prong of the analysis on the basis of the existing record. *Ledezma-Rodriguez*, 423 F.3d at 836 (even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance); *Davis*, 423 F.3d at 877 (same).

"To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley*, 97 F.3d at 1135 (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994)). However, "'there is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming.'" *Armstrong v. Kemna*, ___ F.3d ___, ___, 2010 WL 10389, *13 (8th Cir. Jan. 5, 2010) (quoting *McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996), with citations omitted).

Here, even if the alibi witnesses had testified at trial consistent with the averments in their affidavits, Ross cannot show that their testimony probably would have changed the outcome of the trial. *Hadley*, 97 F.3d at 1135. At best, the missing alibi testimony would have provided an alibi for only *one* controlled buy and would have impugned the credibility of only *one* confidential informant. Ross seems to suggest that impeaching one confidential informant would somehow, necessarily, have impeached another confidential informant. Even granting that possibility—which the court finds rather doubtful—the question is whether the rest of the prosecution's case "remains overwhelming."

*Armstrong*, ___ F.3d at ___, 2010 WL 10389 at *13. Here, it does. As the respondent points out, there was evidence of *nine* "controlled buys," some involving a different confidential informant, as well as Ross's own admission of his involvement in cocaine trafficking. As the Eighth Circuit Court of Appeals found in this case, even acknowledging that Ross could make reasonable arguments about the credibility of the confidential informants, the confidential informants' testimony was corroborated by testimony of law enforcement officers and audio recordings of controlled buys. *Judon*, 472 F.3d at 583. Thus, the alibi witnesses would not have destroyed the prosecution's entire case or impugned the corroborating evidence, even if they might have impeached one confidential informant. In other words, while counsel's performance concerning alibi witnesses might have been—and this court thinks likely was—deficient, Ross's ineffective assistance of counsel claim concerning alibi witnesses fails on the "prejudice" prong, because Ross cannot show that the outcome of the trial would likely have been different, if the alibi witnesses had testified. *Hadley*, 97 F.3d at 1135.

This claim will be denied.

### 3.    *Failure to investigate involuntary statements*

Next, Ross asserts that his counsel was ineffective in failing to investigate and preserve evidence of the involuntary nature of his February 1, 2005, statements, owing to his mental state, and to file a motion to suppress in a timely manner. The respondent denies that Ross is entitled to relief on this claim.

### a.    *Arguments of the parties*

Ross asserts that counsel performed deficiently with regard to his February 1, 2005, statements, because counsel did not investigate the circumstances surrounding those statements. Ross argues that counsel did not spend adequate time with Ross to determine Ross's side of the story with regard to the statements, so that all he got to support his

belated motion to suppress the statements was a list of medications.  Thus, Ross appears to argue that counsel was ineffective for failing to present the "competent evidence" of his depression and the influence of the medications that he was under that the Eighth Circuit Court of Appeals found was missing at trial.  *See Judon*, 472 F.3d at 581.  Indeed, Ross argues that counsel went through the motions before the district court with regard to the motion to dismiss, even though the result was a foregone conclusion.  Ross also argues that he was prejudiced by counsel's deficient performance, because counsel failed to learn that Ross had been taken to a mental health facility, after a suicide attempt, shortly before Ross talked to law enforcement officers.  Consequently, Ross argues, counsel did not know that Ross had been hunted down on a federal warrant, then charged with state crimes, so that he would be left in state custody with state-appointed counsel who was unfamiliar with Ross's mental state, Ross's federal charges, or the federal system, nor did federal counsel discover and assert that Ross's suicidal state, the coercive atmosphere of his confinement, and the knowledge of impending federal charges had inhibited his will for self-determination.  Ross contends that counsel's deficient performance also meant that counsel failed to discover and present, at a timely suppression hearing, evidence from mental health professionals about Ross's mental state at the time of his statements.  Ross also argues that, ultimately, counsel's deficient performance meant that counsel failed to eliminate prejudicial statements, which would have left unreliable confidential informant testimony as the only evidence against Ross.

The respondent argues that there was no trigger for any duty on counsel's part to investigate or litigate the circumstances of Ross's statements.  Although counsel discussed Ross's statements with him on several occasions, it was not until shortly before trial that Ross suggested that the statements were involuntary.  When Ross made that assertion, counsel then attempted to investigate it, produced what evidence he could of Ross's

medications, and managed to convince the court to hear an untimely motion to suppress. The respondent asserts that counsel could not do more, where Ross refused to allow counsel to request a continuance of the trial. The respondent argues that, even if counsel's performance concerning the allegedly involuntary statements was deficient, counsel's deficient performance did not prejudice Ross, because there was other damaging evidence besides Ross's own statements. The respondent also argues that any deficient performance was not prejudicial, because Ross could not have shown that his statements were involuntary, where there was no improper police conduct, and he cannot show that his alleged mental problems or his medications overbore his will. Moreover, the respondent asserts that the law enforcement officers present for Ross's statements had no reason to believe that Ross's statements were anything other than voluntary, where Ross requested the meeting, and the law enforcement officers saw no indication in Ross's demeanor that his statements were involuntary.

In reply, Ross argues that he never told counsel that he would plead guilty, so there was no reason for counsel to leave any investigation to the last minute. He also contends that he asked counsel to subpoena the jail visitation records and mental health center records, but counsel failed to do so. Furthermore, he argues that counsel never engaged in the sort of basic interview—at all, let alone in a timely fashion—about the circumstances of the statements that would have elicited information about the statements on which to base a timely motion to suppress.

### b. *Analysis*

"'Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Cagle v. Norris*, 474 F.3d 1090, 1097 (8th Cir. 2007) (quoting *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005)). Here, the court has considerable doubt that counsel

adequately investigated the circumstances of Ross's February 1, 2005, statements or adequately considered whether there were any viable theories for excluding those statements, or that counsel attempted to do so sufficiently in advance of trial that he could develop evidence to support any basis for challenging the statements. As Ross points out, such an investigation was reasonably necessary, because the February 1, 2005, statements were significant evidence against Ross. As Ross also points out, counsel's failure to investigate the February 1, 2005, statements until the last minute was hardly justified on the basis that counsel thought the case would plead out, where Ross was never offered a written plea agreement, he declined to testify against two defendants in a federal trial shortly before his own, because he asserted that he did not know anything about those defendants, and it is not clear what—other than the February 1, 2005, statements—led counsel to believe that Ross would be used as a cooperating witness and offered a cooperation plea agreement. Finally, the Eighth Circuit Court of Appeals opined that Ross produced no "competent evidence" that his confession was involuntary because he was depressed and under the influence of anti-depressant medication, *see Judon*, 472 F.3d at 575, which suggests that counsel performed deficiently in failing to develop additional evidence of Ross's mental state and medications, where the record now shows that some such evidence did exist, in the form of mental health treatment records.

All that said, the court once again finds that this ineffective assistance claim turns not on the deficient performance prong of the *Strickland* analysis, but on the prejudice prong. *Ledezma-Rodriguez*, 423 F.3d at 836 (even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance); *Davis*, 423 F.3d at 877 (same). More specifically, if the evidence that Ross claims his counsel could have marshaled and relied on in a timely motion to suppress would not have been sufficient to demonstrate that his February 1,

2005, statements were involuntary, then he cannot show that, but for counsel's deficient performance, the outcome of his motion to suppress (or his trial) would have been different. *Rice*, 449 F.3d at 897 (to satisfy the "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome'" (quoting *Strickland*, 466 U.S. at 694)); *Davis*, 423 F.3d at 877 (same).

"A statement is involuntary if the totality of the circumstances show that 'pressures exerted by the authorities overwhelmed the defendant's will.'" *United States v. Dehghani*, 550 F.3d 716, 719-20 (8th Cir. 2008) (quoting *United States v. Martin*, 369 F.3d 1046, 1055 (8th Cir. 2004)). The Eighth Circuit Court of Appeals, however, has already held that Ross initiated the interview on February 1, 2005, that Ross was given his *Miranda* warnings and continued to agree to speak to the law enforcement officers, and that the officers observed nothing in Ross's statements or behavior to indicate that his statements were not voluntary. *Judon*, 472 F.3d at 581. The Eighth Circuit Court of Appeals has also held that, even assuming that the officers promised to forward Ross's information to federal prosecutors, there is no evidence that such a promise overbore his will and critically impaired his capacity for self-determination, such that his statements were not rendered involuntary. *Id.* Ross has still not presented any evidence that the officers overbore his will and critically impaired his capacity for self-determination, *see id.*, so that he cannot show that there is a reasonable probability that his motion to suppress would have been granted on the basis of conduct by the officers present, even had counsel investigated further.

Similarly, where medications or drugs and mental impairments allegedly made the defendant's statements involuntary, "'the test is whether these mental impairments caused

the defendant's will to be overborne.'" *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008). Although Ross contends that counsel could have produced more evidence of his mental stress, including a suicide attempt, diagnoses of depression, and prescriptions for an antidepressant and a sleep aid, such evidence more than likely would not have made any difference to the success of his motion to suppress.

Specifically, the Eighth Circuit Court of Appeals has held that, where a defendant asserts that drug use or medications impaired his ability to give a voluntary confession, other evidence may show that he was not sufficiently impaired. *See Gaddy*, 532 F.3d at 788. For example, in *Gaddy*, the record showed that, despite the defendant's assertions that he had not slept the night before his statement and that he had consumed alcohol and drugs several hours before he waived his rights, the officers testified that the defendant looked calm and quiet, understood his *Miranda* rights and agreed to waive them, and thus did not display the traits of someone who was confused or disoriented or whose will was overborne by his intoxication. *Id.*; *see also United States v. Howard*, 532 F.3d 755, 763 (8th Cir. 2008) (there was nothing to show that the defendant's will had been overborne by his sleeplessness and drug use, where he did not appear to the court to be intoxicated, talked coherently, and his behavior indicated that he understood what was happening). Similarly, here, as the Eighth Circuit Court of Appeals noted and the trial record shows, Ross initiated the interview, the officers present gave Ross his *Miranda* warnings and he waived his right to counsel, Ross indicated that he understood his situation with regard to possible federal charges, Ross appeared to be "fine" and "didn't seem agitated at all," just "worried about what was going to happen to him," and the officer did not see anything in his attire or demeanor to suggest that he was not mentally competent or that he was giving the statements involuntarily. *Judon*, 472 F.3d at 581-82; Trial Transcript, Vol. I, 177:2-180:20; *see also id.*, 180:24-183:1 (cross-examination). The Eighth Circuit Court of

Appeals has also rejected the notion, which Ross offers here, that the influence of medications, the "psychological implications" of a defendant's circumstances, and his physical helplessness in a strange location combined could render a defendant's statements to law enforcement officers involuntary, even where the officers instigated the interview. *See United States v. New*, 491 F.3d 369, 374 (8th Cir. 2007).

Thus, even assuming that counsel could have presented all of the evidence concerning Ross's circumstances, mental condition, and medications at the time of the February 1, 2005, statements that Ross now asserts was reasonably available had counsel investigated, there is simply no reasonable probability that the statements would have been suppressed. This claim will be denied.

### 4. *Failure to challenge untimely presentment to a federal magistrate judge*

As his third claim, Ross asserts that his trial counsel was ineffective for failing to investigate whether his rights were violated by the failure to take him before a federal magistrate judge in a timely manner as required by Rule 5 of the Federal Rules of Criminal Procedure. The respondent argues that Ross is not entitled to any relief on this claim.

### *a.* *Arguments of the parties*

Ross argues that, even though he was sought on a federal warrant, he was originally arrested only on state charges which were "predestined" to be quietly disposed of for time served. Consequently, even though federal charges had been filed and he had been arrested in January 2005, he was not arrested on and advised of the nature of the federal charges, and brought before a federal magistrate judge, until March 2005. He contends that his attorney "apparently was not familiar with the common tactic of letting the federal defendant sweat it out in jail under state charges to make them easier to deal with once the federal system swung into action," so counsel did not ask about or investigate the delay between arrest and presentment to a federal magistrate judge. Petitioner's Brief (Civ.

docket no. 8) at 28. He asserts that this case is an example of the ease with which federal agents can evade the prompt presentment requirement of Rule 5 by hiding behind state charges arising from a roundup on federal warrants. He contends that giving a defendant in his situation only state counsel for state charges and leaving him in state custody would leave him on his own as to the federal charges and make him an easy target for eliciting incriminating statements. More specifically, he argues that his counsel failed to ask basic questions about Ross's arrest, the answers to which could have led to a timely motion to dismiss the case or suppression of Ross's February 1, 2005, incriminating statements for a Rule 5 violation. Ross points out that, only after he made his incriminating statements were his state charges resolved and was he arrested on federal charges and brought before a federal magistrate judge. He asserts that this case is a blatant example of forum shopping by federal agents.

The respondent argues that Rule 5 was simply inapplicable here, where Ross was arrested on state charges, so that the right to presentment before a federal magistrate judge did not even attach until he was arrested on federal charges. The respondent argues that Ross was promptly presented before a federal magistrate judge after his arrest on federal charges. Under these circumstances, the respondent argues that Ross's counsel had no duty to assert an unavailing claim of a Rule 5 violation. In addition, counsel avers that, because the state arrested Ross and held him on state charges prior to his arrest on federal charges, counsel did not believe that there was a Rule 5 violation, so counsel did not file a motion alleging such a violation in Ross's case.

### b. Analysis

Again, "'[r]easonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Cagle*, 474 F.3d at 1097 (quoting *Lyons*, 403 F.3d at 594). On the other hand,

counsel does not render ineffective assistance by failing to make frivolous arguments. *See Strickland*, 466 U.S. at 689; *see also Davis*, 406 F.3d at 510 (counsel did not provide ineffective assistance where no viable appellate claim existed). The question for the "deficient performance" prong of the present ineffective assistance claim is whether a contention that Rule 5 was violated in Ross's case would have appeared frivolous to a reasonable attorney, based on what counsel knew at the time, such that counsel's duty to investigate and develop evidence in support of such a claim was triggered. Because the standard for the "prejudice" prong is different—the petitioner must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome,'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same)—the question for that prong of the analysis here is whether there is a reasonable probability that a Rule 5 challenge would have been successful, based on the evidence that Ross now claims his counsel could and should have developed.

As the Eighth Circuit Court of Appeals recently explained,

> Rule 5(a) of the Federal Rules of Criminal Procedure provides the arrested person shall be taken without unnecessary delay before a magistrate judge.
>
>> The requirements of [Rule 5(a)] and the teachings of the Supreme Court in *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608, 87 L.Ed. 819 (1943) and *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957) are designed to frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual. But this salutary principle is not applicable where the person under arrest is in the custody and under the

> control of local and not federal officers, *unless*, of
> course, the state officers are acting at the direction of or
> in concert with the federal officers, or there is
> collaboration between the federal and state authorities.
> *See Grooms v. United States,* 429 F.2d 839, 842-843
> (8th Cir. 1970), and the numerous cases there cited.
>
> United States v. Morris, 445 F.2d 1233, 1236 (8th Cir. 1971).

*United States v. Jeanetta*, 533 F.3d 651, 655-56 (8th Cir. 2008). Thus, under *Morris* (and *Jeanetta*), the general rule is that arrest on state charges and placement in state custody do not implicate Rule 5 or trigger a requirement for prompt presentation to a *federal* magistrate judge, but there is a caveat, in the "unless" clause quoted above, to the effect that undue involvement of federal officers in the state detention may implicate Rule 5. Some time ago, the Eighth Circuit Court of Appeals opined that, in a proper case, a Rule 5 violation would warrant suppression of a confession obtained while in state custody before an appearance before a federal magistrate judge on federal charges. *See United States v. Rose*, 541 F.2d 750, 757 (8th Cir. 1976) (but not finding such circumstances in that case).

Considering the reasonableness of counsel's performance in Ross's case in light of the standards for a Rule 5 violation in *Jeanetta* and *Morris*, based on what counsel knew at the time, it is true, as counsel and the respondent argue, that Ross was in state custody on state charges, so that Rule 5 did not appear to be implicated. *See id.* (the "'salutary principle'" on which Rule 5 is based "'is not applicable where the person under arrest is in the custody and under the control of local and not federal officers'" (quoting *Morris*, 445 F.2d at 1236). Counsel knew more, however. Counsel also knew that the search for Ross had been prompted by a *federal* arrest warrant, and he knew that Ross had given statements while in state custody that was being used by federal prosecutors as part of the evidence against Ross on the original federal charges. The court will consider, for the sake of argument, that these circumstances would have been enough to trigger a reasonable

attorney to consider, investigate, and develop any evidence of a Rule 5 violation, that is, to consider whether this case fell within the "unless" clause in *Morris*, rather than the general rule that state arrest and custody do not implicate Rule 5. *Morris*, 445 F.2d at 1236 ("But this salutary principle is not applicable where the person under arrest is in the custody and under the control of local and not federal officers, *unless*, of course, the state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities." (emphasis added)); *Jeanetta*, 533 F.3d at 656 (quoting *Morris*).

Even assuming, for the sake of argument, that counsel performed deficiently in failing to investigate whether Ross had been subjected to a Rule 5 violation, Ross cannot establish the "prejudice" prong of this ineffective assistance claim, because he cannot show that, even with the evidence that he believes counsel should have discovered, there is a reasonable probability that the court would have found a Rule 5 violation. *Rice*, 449 F.3d at 897; *Davis*, 423 F.3d at 877. This is so, because the circumstances here are very much like those in *Jeanetta*. In *Jeanetta*, the circumstances leading to the defendant's arrest were as follows:

> On October 12, 2005, a federal indictment was returned charging Jeanetta with conspiracy to possess and possession with intent to distribute methamphetamine. Eight months later, on June 1, 2006, Jeanetta was taken into custody by members of a multi-jurisdictional task force. A search of the RV he was living in uncovered two handguns. Jeanetta was returned to state custody and negotiated a plea agreement with the state prosecutor to drug charges stemming from his arrest in 2005. After pleading guilty to the state charges, Jeanetta was released to federal authorities on July 18, 2006, and arraigned on the federal indictment before a magistrate judge the next day.

*Jeanetta*, 533 F.3d at 653.  The Eighth Circuit Court of Appeals found no Rule 5 violation in these circumstances:

> When Jeanetta was arrested on June 1, 2006, he was taken into and held in state custody until he entered a plea of guilty to the outstanding state charges.  Upon pleading guilty, Jeanetta was released into federal custody on July 18, 2006, and arraigned the following day.  Because Jeanetta was in state custody the entire time, the protections of Rule 5(a) are not implicated.  Further, Jeanetta offers no evidence to suggest he was held in state custody at the direction of or in concert with federal officers.  Thus, there was no violation of Rule 5(a).

*Jeanetta*, 533 F.3d at 656.

Here, Ross, like the defendant in *Jeanetta*, had been charged in a federal indictment when he was arrested by members of a joint task force, but he was arrested on state charges and kept in state custody until the state charges were resolved.  Only then was he released into federal custody and promptly arraigned on the federal charges.  *Id.* Moreover, like the defendant in *Jeanetta*, Ross has offered no evidence to suggest that he was held in state custody at the direction of or in concert with federal officers, or as the result of collaboration between the federal and state authorities.  *Id.* Indeed, he has offered no evidence that the circumstances of his incarceration or the circumstances under which he gave the February 1, 2005, statements would have been any different had he been immediately arrested on the federal charges against him and immediately presented to a federal magistrate judge—and Ross requested the meeting with law enforcement officers on February 1, 2005, specifically because he was aware that federal charges were pending and he wanted to help himself on those charges.  Finally, as in *Rose*, Ross has not produced any evidence that his arrest on state charges and placement in state custody was

a mere stratagem to allow him to be interviewed by federal officers or to get him to provide evidence against himself on federal charges. *Rose*, 541 F.2d at 758.

In short, Ross cannot show the required "prejudice" to prevail on this ineffective assistance claim, and this claim will be denied.

### 5. *Failure to appeal drug quantity determination by the court*

Ross's fourth claim for relief is that his counsel failed to litigate on appeal the sentencing court's determination of the crack versus powder quantities attributable to him in violation of his Sixth Amendment right to trial by jury. The respondent argues that Ross is not entitled to any relief on his claim of ineffective assistance of counsel on appeal.

### a. *Arguments of the parties*

Ross's claim of ineffective assistance of counsel is purportedly based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. 220 (2005). He contends that the Sixth Amendment prohibits a scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than prior conviction, not found by a jury. Here, Ross argues that he had a constitutional right to have a jury determine how much of the cocaine involved was crack and how much was powder, but counsel failed to argue on appeal that the entire amount must be treated as powder. He argues that, when the sentencing court arbitrarily determined how much cocaine was crack and how much was powder, it "found facts" that increased his sentence. He contends that there was no evidence upon which to base the division of the cocaine, so that it all should have been treated as powder, but counsel did not so argue on appeal.

The respondent argues that Ross is asserting that his counsel should have known, and raised at sentencing or on appeal, that the Supreme Court would later render a decision like the one in *Spears v. United States*, 129 S. Ct. 840 (2009), holding that the sentencing court may disregard the disparity between crack and powder cocaine at sentencing.

However, the respondent argues that counsel cannot be found ineffective for advising his client in accordance with controlling precedent at the time of trial and sentencing, nor for failing to anticipate future changes in the law.

### b.    Analysis

The court finds that the respondent's argument misses the point of Ross's last claim. Ross does not appear to the court to be arguing that his counsel was ineffective for failing to anticipate that *Spears* would allow sentencing courts to disregard the disparity between crack and powder cocaine at sentencing. Rather, the court understands Ross to be asserting a quite different claim that the sentencing court improperly determined that some part of the cocaine involved in his offenses was crack cocaine, which increased his maximum sentence, at least where the sentencing court did maintain some crack-to-powder disparity by using a 20:1 ratio.

The answer to the claim that Ross actually makes, however, is clear: "It is well established in this circuit that 'judicial findings of drug quantity for sentencing purposes do not violate the Sixth Amendment when made under an advisory Guidelines regime.'" *United States v. Davis*, 457 F.3d 817, 825 (8th Cir. 2006) (quoting *United States v. Tabor*, 439 F.3d 826, 830 (8th Cir. 2006). Moreover, prior to Ross's first sentencing, on November 22, 2005, the Eighth Circuit Court of Appeals had already recognized on April 13, 2005, that, "'with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection.'" *United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005) (quoting *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005)). The respondent is correct that "counsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance." *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002). Thus, counsel could not have been ineffective for failing to argue that the sentencing court could not find specific quantities of both crack

cocaine and powder cocaine in Ross's case, even if the crack quantities increased Ross's sentencing range, because the court used a 20:1 ratio, particularly where the jury had already found beyond a reasonable doubt that some of the offenses, including the conspiracy, did involve crack cocaine.

To the extent that Ross now argues that there was no basis to determine how much of the cocaine was crack and how much was powder, so that it all should have been treated as powder, counsel did raise that issue on direct appeal, and the Eighth Circuit Court of Appeals rejected that argument. *Judon*, 472 F.3d at 584-85 (Ross argued on appeal that the prosecution failed to prove the amount of crack and powder cocaine attributable to him, but the court found evidence in the testimony of one of the law enforcement officers that, while ambiguous, had reasonably been understood by the sentencing court to mean that Ross trafficked both a quarter ounce of crack cocaine and a quarter ounce of powder cocaine each week during the relevant time period). There is no reasonable probability, in light of this holding after Ross's first sentencing, that the outcome would have been different, had counsel challenged the *reduced* quantities of crack and powder cocaine that Judge Piersol found on resentencing.

This claim will be denied.

### 6.    *Cumulative effect of counsel's errors*

Finally, Ross argues that, while each and every error of counsel that he has asserted is sufficient basis for granting him relief, when the errors are viewed together, there can be no argument that he received effective assistance of counsel and, as a result, he did not receive a fair trial. The respondent does not respond specifically to this contention. However, the court has rejected all of Ross's individual claims of ineffective assistance of counsel, and the Eighth Circuit Court of Appeals "repeatedly ha[s] recognized 'a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.'" *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006)

41

(quoting *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir .2002), and citing other cases so holding); *see also United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) (reiterating the rejection of "the cumulative error theory of post-conviction relief" in *Middleton*). Ross is not entitled to relief on his "cumulative error" claim, either.

### D.  Certificate Of Appealability

Denial of Ross's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein.  The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)**  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> * * *
>
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* Fed. R. App. P. 22(b).  To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569.  Moreover, the United States Supreme Court reiterated in *Miller-El* that

"'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that Ross has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of Ross's claims to be debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Ross does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

## III. CONCLUSION

Upon the foregoing, petitioner Gladger Ross's April 8, 2009, Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (Civ. docket no. 2) is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 29th day of January, 2010.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA